## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CT-01179-SCT

*MICHAEL TURNBOUGH*

*v.*

*JANET LADNER*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/04/1997 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOE SAM OWEN |
| | ROBERT P. MYERS, JR. |
| ATTORNEYS FOR APPELLEE: | ROBERT M. FREY |
| | MICHAEL E. McWILLIAMS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 12/09/1999 |
| MOTION FOR REHEARING FILED: | 12/22/99; denied 4/20/2000 |
| MANDATE ISSUED: | 4/27/2000 |

### EN BANC.

### McRAE, JUSTICE, FOR THE COURT:

¶1. Michael Turnbough suffered decompression sickness after participating in a certification scuba dive led by Janet Ladner. Turnbough subsequently filed suit against Ladner alleging she was negligent in planning and supervising the dive. Ladner filed a motion for summary judgment, which the Circuit Court of Harrison County granted based on an anticipatory release that Turnbough had signed in favor of Ladner. Turnbough appealed, the Court of Appeals affirmed, and we granted certiorari. We reverse the Court of Appeals, as well as the trial court, and remand for further proceedings consistent with this opinion. We hold that the release executed by Turnbough did not exclude from liability the type of negligence which forms the basis for Turnbough's complaint; and therefore, the trial court's grant of summary judgment was error.

### FACTS

¶2. Michael Turnbough decided in 1994 that he wanted to obtain his open-water certification as a scuba diver. He had previously been certified as a scuba diver, but his certification had expired back in the 1980's. Turnbough enrolled in a scuba diving class offered by Gulfport Yacht Club and taught by Janet Ladner. Upon learning from Ladner that all of the participants would be required to execute a release in favor of her and the Gulfport Yacht Club in order to participate in the class, Turnbough questioned a fellow student who also happened to be an attorney. After Turnbough's classmate informed him that such releases were unenforceable, Turnbough then executed the document entitled "Liability Release and Express

Assumption of Risk." The release, in pertinent part, stated

> Further, I understand that diving with compressed air involves certain inherent risks: decompression sickness [and others]. . . .

¶3. At the conclusion of the six- week course, the class convened in Panama City, Florida to perform the first of their "check-out dives" in order to receive certification. On Saturday, July 23, 1994, the class performed two dives from the beach. However, Turnbough's participation in the first dive was cut short by a leaking tank. He completed the second dive with no apparent problems. The next morning, Sunday, July 24, 1994, the class performed two dives from a dive boat. Two dives of sixty feet each were scheduled, but because the dive boat had engine problems, the first dive site was only forty-six to forty-eight feet deep. The second dive descended to sixty feet, and Ladner calculated the maximum time allowable for the second dive as thirty-eight minutes.

¶4. Turnbough began to feel the first effects of decompression sickness, commonly known as "the bends," on his way back to Gulfport that evening. The next day Turnbough began experiencing a pain that he described as "arthritic" in his joints. On Tuesday, Turnbough began attempting to contact Ladner to inform her of his symptoms. He continued to make attempts to contact her throughout the week, finally reaching her on Friday. Ladner advised Turnbough to call a diver's hotline, which in turn instructed him to seek medical attention at a dive hospital. Turnbough received treatment for decompression sickness at the Jo Ellen Smith Hospital in New Orleans. Turnbough states that he was told by the doctors at the hospital who ran the dive profile that the dive was too long, and there should have been a decompression stop before the divers surfaced. He further states that he was told that he could never dive again. Tom Ebro, an expert in water safety and scuba diving, opined that Ladner was negligent in planning the depths of the dives as well as in failing to make safety stops and that these errors significantly increased the risk that her students might suffer decompression illness.

¶5. On February 10, 1995, Turnbough filed suit against Ladner. In his complaint, Turnbough alleged that Ladner was negligent in her supervision of the dive and in exposing him to decompression injury. Ladner filed a motion for summary judgment on October 27, 1995, based on the release Turnbough had signed. The circuit court granted the motion, and dismissed the case.

¶6. Turnbough appealed, asserting that the release should be declared void as against public policy, and the case was assigned to the Court of Appeals. The Court of Appeals found that the release was a contract of a purely personal nature and did not violate Mississippi public policy because scuba diving does not implicate a public concern. We subsequently granted certiorari.

## DISCUSSION

¶7. The law does not look with favor on contracts intended to exculpate a party from the liability of his or her own negligence although, with some exceptions, they are enforceable. However, such agreements are subject to close judicial scrutiny and are not upheld unless the intention of the parties is expressed in clear and unmistakable language. 57A Am. Jur. 2d *Negligence* § 65, at 124 (1989); *see also **Willard Van Dyke Prods., Inc. v. Eastman Kodak Co.,*** 189 N.E.2d 693, 695 (N.Y. 1963) ("clear and unequivocal terms"). "Clauses limiting liability are given rigid scrutiny by the courts, and will not be enforced unless the limitation is fairly and honestly negotiated and understandingly entered into." ***Farragut v. Massey***, 612 So. 2d 325, 330 (Miss. 1992) (quoting 17 Am. Jur. 2d *Contracts* § 297, at 298 n.74 (1991).

¶8. The wording of an exculpatory agreement should express as clearly and precisely as possible the *extent* to which a party intends to be absolved from liability. ***Bradley Realty Corp. v. New York***, 389 N.Y.S.2d 198, 199-200 (N.Y. App. Div. 1976); ***Hertzog v. Harrison Island Shores, Inc.,*** 251 N.Y.S.2d 164, 165 (N.Y. App. Div. 1964). Failing that, we do not sanction broad, general "waiver of negligence" provisions, and strictly construe them against the party asserting them as a defense. *See* ***Leach v. Tingle,*** 586 So. 2d 799, 801 (Miss. 1991); ***State Farm Mut. Auto. Ins. Co. v. Scitzs***, 394 So. 2d 1371, 1372 (Miss. 1981).

¶9. In further determining the extent of exemption from liability in releases, this Court has looked to the intention of the parties in light of the circumstances existing at the time of the instrument's execution. ***Farragut***, 612 So. 2d at 330. The affidavit of Tom Ebro, an expert in water safety and scuba diving, shows that the alleged negligent acts on which Turnbough's claim is based could not have been contemplated by the parties. Ebro stated that Ladner's instruction fell "woefully short" of minimally acceptable standards of scuba instruction. Specifically, he averred that Ladner negligently planned the depths of the dives and failed to make safety stops which significantly increased the risk of decompression illness, especially with a student class. Assuming Turnbough was aware of the inherent risks in scuba diving, it does not reasonably follow that he, a student, intended to waive his right to recover from Ladner for failing to follow even the most basic industry safety standards. This is especially true since Ladner, who held herself out as an expert scuba instructor and is presumed to have superior knowledge, is the very one on whom Turnbough depended for safety. In this case it appears that Ladner may have miscalculated the amount of time for the dive or may have failed to take into account previous dives. This is important because nitrogen builds up in the body while underwater and, with too much nitrogen, the "bends" and permanent damage including loss of life may occur. Surely it cannot be said from the language of the agreement that Turnbough intended to accept any heightened exposure to injury caused by the malfeasance of an expert instructor. Turnbough, by executing the release, did not knowingly waive his right to seek recovery for injuries caused by Ladner's failure to follow basic safety guidelines that should be common knowledge to any instructor of novice students.

¶10. We have held in ***Quinn*** that contracts attempting to limit the liabilities of one of the parties would not "be enforced unless the limitation is fairly and honestly negotiated and understood by both parties." ***Quinn v. Mississippi State Univ.***, 720 So.2d 843, 851 (Miss. 1998) (citation omitted). In this case, Turnbough signed a pre-printed contract, the terms of which were not negotiated. Since the contract was not negotiated and contained a broad waiver of negligence provision, the terms of the contract should be strictly construed against the party seeking to enforce such a provision. *See* ***Leach v. Tingle,*** 586 So.2d at 801*;* ***State Farm Mut. Auto. Ins. Co. v. Scitzs***, 394 So.2d at 1372.

¶11. Although waivers are commonly used and necessary for some activities and the attendant risks and hazards associated with them, those who wish to relieve themselves from responsibility associated with a lack of due care or negligence should do so in specific and unmistakable terms. The agreement in this case fails to do that.

## CONCLUSION

¶12. We therefore reverse the judgment of the Court of Appeals and the trial court's summary judgment and we remand this case to the trial court for further proceedings consistent with this opinion.

¶13. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS AND WALLER, JJ., CONCUR. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., SMITH AND COBB, JJ.**

**MILLS, JUSTICE, DISSENTING:**

¶14. The majority finds that summary judgment was not appropriate in this case, and therefore reverses and remands for a trial. Because the trial court was correct in granting summary judgment, I respectfully dissent.

¶15. We must determine the validity of an unambiguous release dealing with admittedly hazardous activities signed with full awareness of all the risks and dangers by Turnbough in favor of Ladner. The record shows that Turnbough consulted a fellow classmate who also happened to be an attorney. Turnbough's classmate gratuitously informed him that such releases were unenforceable. Turnbough then proceeded to sign the release but he now seeks to have the release invalidated on the basis that such releases are unenforceable. Turnbough's conduct in this matter shows that he entered into a binding contract with no intention of honoring it and every intention of breaking it at a later time should it become convenient.

¶16. Directly addressing the facts of this case, the release in question states in pertinent part:

> I, Michael Turnbough, hereby affirm that I have been advised and thoroughly informed of the inherent dangers of skin diving and scuba diving.
>
> Further, I understand that diving with compressed air involves certain inherent risks: decompression sickness [and others]. . . .
>
> I understand and agree that neither my instructor(s) Janet Ladner [nor the Yacht Cub or other participants] may be held liable or responsible in any way for any injury, death, or other damages to me or my family, heirs, or assigns that may occur as a result of my participation in this diving class or as a result of the negligence of any party, including the Released Parties, whether passive or active.

¶17. In my opinion such unambiguous releases comport with the public policy of the State of Mississippi and should be enforced. The failure to enforce such releases when dealing with obviously risky activities, such as scuba diving, will have a chilling effect on the numerous sporting activities and other events of obvious danger. We should allow reasonable adults to assume such risks when they choose to engage in activities of greater than usual danger.

¶18. Releases are not only meant to save the party in whose favor it is executed from being held ultimately liable, but are also intended to allow such a party to avoid the costs and anxiety of having to fully litigate the matter. Summary judgment is the appropriate mechanism to do just that. Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "A 'material' fact tends to resolve any of the issues, properly raised by the parties." *Mississippi Road Supply Company, Inc. v. Zurich-American Insurance Company*, 501 So.2d 412, 414 (Miss. 1987) (quoting *Pearl River County Board of*

*Supervisors v. South East Collections Agency, Inc.*, 459 So.2d 783, 785 (Miss.1984)).

¶19. Finally, the record in this case indicates that Turnbough, after signing a release he did not intend to honor, admittedly consumed several alcoholic beverages at a local cabaret just hours before his dive in violation of clear warnings given to him by Ladner. Today's majority opinion favors those who recklessly ignore sober warnings, intentionally sign agreements that they have no intention of fulfilling and then throw themselves upon the mercy of the Courts to reward their dishonest and reckless behavior. This Court should not reward such conduct. I would therefore affirm the trial court's grant of summary judgment in favor of Ladner.

¶20. I respectfully dissent.

**PRATHER, C.J., SMITH AND COBB, JJ., JOIN THIS OPINION.**